STATE OF FLORIDA et al. v. UNITED STATES et al. BROOKS–SCANLON CORPORATION et al. v. SAME. WILSON LUMBER CO. OF FLORIDA v. SAME.

District Court, N. D. Georgia. March 22, 1929.

Nos. 514, 511, 512.

For former opinion, see 30 F.(2d) 116.

Chas. E. Cotterill, of Atlanta, Ga., August G. Gutheim, of Washington, D. C., Fred H. Davis, Atty. Gen., Edward P. Sanborn, of St. Paul, Minn., Norman, Quirk & Graham and J. V. Norman, all of Louisville, Ky., H. P. Adair, G. L. Rutherford, H. P. Osborne, and E. W. Mitchell, all of Jacksonville, Fla., and T. T. Turnbull, of Monticello, Fla., for complainants.

W. J. Donovan, Asst. to the Atty. Gen. and Elmer B. Collins, Sp. Asst. to the Atty. Gen., for the United States.

J. Stanley Payne, Sol., of Washington, D. C., for defendant Interstate Commerce Commission.

James A. Perry, Sol., of Atlanta, Ga., for intervener Georgia Public Service Commission.

Alston, Alston, Foster & Moise, of Atlanta, Ga., for Atlantic Coast Line R. Co.

Before WALKER, Circuit Judge, and DAWKINS and SIBLEY, District Judges.

SIBLEY, District Judge. ██ On February 7, 1929, subsequent to the decision in this case, the Interstate Commerce Commission ordered that its order of August 2, 1928, be "changed in language for the purpose of clarification as follows: In the fourth paragraph, substitute for 'within the state of Florida' the following: 'Within and throughout the entire state of Florida, without exception.'" A rehearing has been granted, and the Atlantic Coast Line Railroad Company allowed to intervene in support of the order.

The ambiguity which we formerly found in the order of the Commission is now removed, and the intent made clear that the intrastate log rate in question is to be changed over the entire Coast Line system in Florida. This clarifying order is not to be esteemed a new order, or even an amendment extending the former one, but is only a clarification of that which was found before to be uncertain, and, though made without further hearing, or evidence, is none the less effective from its date, at least. We have therefore to examine the record more closely, and see if a state-wide change of the rate is sustainable. Except as to the territorial application of the order, we find no occasion to modify what was previously ruled. The evidence does not show any actual or potential interstate commerce from South Florida in such logs as are involved in this rate. Because of their cheapness and of the geography of the state, the inherent probabilities are against it. No such case is, therefore, shown by the evidence as to justify a state-wide order altering the intrastate rate, because of undue prejudice to shippers and localities, or because of undue discrimination against the *particular* interstate commerce in such logs.

There is, however, another discrimination against *general* interstate commerce, when one state rate or the system of state rates is so low as to throw an undue burden on the revenues arising from interstate commerce, in order to sustain the carrier engaged in both kinds of commerce. The natural remedy for such a condition is a change of the state rate

or rates to the full extent of their application. The present order, raising the state rate of the Atlantic Coast Line over its entire system in Florida, we think is justified on this ground. The power to prescribe the state rate on a single commodity, over a single road, is included in the language of section 13 (4) of the Commerce Act (49 USCA § 13 (4), whenever the conditions therein stated occur. If such a rate alone is put in issue and fully heard, the power is given to prescribe "the rate" to be thereafter observed. The complaint of the Georgia State Commission exhibited the Coast Line intrastate log rate, and attacked it in its entirety and as applied to all points in Florida. There was no territorial limitation in the complaint. No such limitation was put on the inquiry by any subsequent amendment, or by any order of the Commission. Besides a full attack upon the rate because of undue prejudice to and preference of persons and places in interstate commerce, under section 3 (49 USCA § 3), the complaint in paragraph 11 attacked the rate expressly under section 13 for every reason mentioned in that section as ground for prescribing a state rate. The rate was therefore in issue for all the purposes of section 13, although there was no express prayer for its enhancement, and no express allegation that it was unprofitable to the carrier. The state of Florida was accordingly notified, and the power and duty of the Commission as set forth in section 13 (4) attached.[1]

Upon the hearings, it is true that the parties appeared interested mostly in North Florida because of prejudice to shipments there, and the great bulk of the evidence relates thereto; but, in addition to the common knowledge and skill in rate matters that the

[1] "(4) Whenever in any such investigation the Commission, after full hearing, finds that any such rate, fare, charge, classification, regulation, or practice causes any undue or unreasonable advantage, preference, or prejudice as between persons or localities in intrastate commerce on the one hand and interstate or foreign commerce on the other hand, or any undue, unreasonable, or unjust discrimination against interstate or foreign commerce, which is hereby forbidden and declared to be unlawful, it shall prescribe the rate, fare, or charge, or the maximum or minimum, or maximum and minimum, thereafter to be charged, and the classification, regulation, or practice thereafter to be observed, in such manner as, in its judgment, will remove such advantage, preference, prejudice, or discrimination. Such rates, fares, charges, classifications, regulations, and practices shall be observed while in effect by the carriers parties to such proceeding affected thereby, the law of any state or the decision or order of any State authority to the contrary notwithstanding." 41 Stat. 484.

Interstate Commerce Commission, the Georgia and Florida State Commissions, and the railroads must have in such matters, there was a presentation in the evidence by the Coast Line and by the Florida Commission, respectively, of the cost of service under the attacked rate and of its remunerativeness. Certainly no other litigant could have known the facts better than they. In rejecting the conclusion of slight net income asserted by the witnesses, the Commission did not rule out the basic facts shown, but was at liberty to supplement them and construe them for itself, and make its own conclusion from them. There was in evidence, also, comparisons of the attacked rate with rates on similar logs of other railroads in Florida and in adjacent states, and on other articles, such as sand, gravel, brick, lime, and cement, which, like logs, are shipped in large lots, loaded and unloaded by patrons, and expose the carrier to little risk of loss. There was further comparison with interstate rates established by the Commission itself for this same railroad and in this same territory. All these rates were shown to be from twice to thrice the attacked log rate. On the face of things the log rate is too low, and likely to burden the carrier. The Commission expressly finds that it is obviously unremunerative. It is shown that the commerce in logs over the Coast Line system is and will continue to be very large, and this item of its rates is therefore an important one. We cannot say the order is without evidence to sustain it, on the ground that the former state rate was an undue discrimination against general interstate commerce over the Coast Line Railroads.

Because of the generalness of the complaint and the relative inconspicuousness of the evidence above discussed, we have considered whether there was the full hearing which is made by section 13 a prerequisite to the prescription of a state rate. We have seen that the parties to the establishment of that rate presented the pertinent facts on this issue, and all others had full opportunity to do so. When the examiner filed his report, on page 9 thereof he made an express finding on the unremunerativeness and burdensomeness of the rate, but favorable to it. The exceptions to his report and the replies thereto discussed this finding, but do not contend that it was foreign to the investigation, but only whether it was right or wrong under the evidence. So, when division 4 of the Commission disagreed with the examiner on this and other findings, and an application for rehearing before the entire Commission was made, there is again no motion to reopen the

case for more evidence on this point, but all that is asked is more opportunity for argument on the evidence already taken; one set of litigants contending that the evidence required one conclusion, and the other side contending the contrary. There is before us no distinct claim that any other important evidence could or would be offered on another hearing.

We find no reason to doubt that, however disappointing the result, the hearing was full, within the meaning of the statute, and the power of the interstate Commerce Commission not abused.